**1540 Columbus Corp.**
v.
**County of Cuyahoga**
*[Cite as 5 AOA 141]*

*Case No. 57211*
*Cuyahoga County, (8th)*
*Decided July 19, 1990*

*Harold Pollock, Esq., 1700 Terminal Tower, Cleveland, Ohio 44113, for Plaintiff-Appellant.*

*Richard Goulder, Esq., Justice Center, 9th Floor, 1200 Ontario Street, Cleveland, Ohio 44113, for Defendants-Appellees.*

FORD, J.

Plaintiff-appellant filed the present action for the purpose of acquiring title to certain real property adjacent to real property it already owned. The real property for which plaintiff sought to obtain title is the subject of this appeal and is presently titled in the County of Cuyahoga. In its complaint, plaintiff set forth a claim of ownership based upon the doctrine of adverse possession and alternatively, a claim of ownership based upon the doctrine of equitable estoppel. Plaintiff further requested damages on a continuing trespass count and finally, prayed for injunctive relief so as to enjoin the county from entering plaintiff's real property in an effort to gain access to the property titled in its name.

The record in this case indicates that the trial court scheduled the matter for a pretrial and later ordered the parties to prepare trial briefs.

The briefs of both parties were filed with the trial court. Thereafter, on January 6, 1989 the trial court issued a judgment entry and opinion ruling in favor of the defendant-appellee on the plaintiff's claims of acquiring title pursuant to adverse possession or equitable estoppel. The court dismissed without prejudice the plaintiff's trespass count and its prayer for injunctive relief. The court also found that plaintiff's request for reimbursement of real estate taxes allegedly paid on the county's parcel of property had been mooted by the court's determination on plaintiff's adverse possession and equitable estoppel claims.

Plaintiff appeals the January 6, 1989 judgment entry and assigns four errors for our review. We will deal jointly with plaintiff's first, second and fourth assignments of error as they address the court's manner in which it disposed of the case.

## I.
THE TRIAL COURT ERRED IN ENTERING A FINAL JUDGMENT ON THE AMENDED COMPLAINT OF PLAINTIFF BASED UPON THE BRIEFS SUBMITTED BY THE PARTIES WHEN THERE WAS NO AGREEMENT BY THE PARTIES TO ALLOW THE TRIAL COURT TO DISPOSE OF THE CASE ON BRIEFS AND NO DISPOSITIVE MOTION HAD BEEN FILED BY DEFENDANT-APPELLEES.

THE TRIAL COURT ERRED IN ENTERING A FINAL JUDGMENT ON THE AMENDED COMPLAINT OF PLAINTIFF WHERE PLAINTIFF-APPELLANT HAD DEMANDED AN ORAL HEARING ON ITS AMENDED COMPLAINT AND HAD FILED A FORMAL MOTION REQUESTING AN ORAL HEARING BEFORE THE JUDGMENT OF THE COURT WAS ENTERED.

THE TRIAL COURT ERRED IN HOLDING THAT THE DOCTRINE OF EQUITABLE ESTOPPEL WAS NOT APPLICABLE IN THIS CASE BECAUSE NO TAX RECORDS WERE ATTACHED TO PLAINTIFF-APPELLANTS TRIAL BRIEF WHERE PLAINTIFF-APPEL-LANT INTENDED TO SUBMIT SUCH DOCUMENTARY EVIDENCE TO THE COURT AT THE TIME OF THE TRIAL OF THE WITHIN ACTION.

In plaintiff's first assignment of error it argues that the trial court erred in disposing of its case on the merits in the absence of either party filing a dispositive motion.

In its second assignment of error plaintiff argues it was error for the court to dispose of the case without a hearing at which plaintiff could present evidence. In its fourth assignment of error plaintiff argues that the trial court erred in granting summary judgment on its equitable estoppel claim when plaintiff was never afforded notice that a trial brief was being treated as a motion for summary judgment by the court and never afforded an opportunity to support its claim with evidence.

The trial court's judgment entry of January 6, 1989 began by stating that, "This matter was submitted on trial briefs." The record is devoid of any indication that the parties agreed to have the case disposed of on the briefs. The record reveals that neither party filed with the court a motion to dismiss or a motion for summary judgment.

The trial court's judgment entry is ambiguous. The entry does not reveal under what rule or authority the court proceeded. The entry reveals that the trial court took into consideration issues of law as well as of fact in reaching its conclusion. We presume that the trial court treated the disposition as one for summary judgment.

Civ. R. 7(B)(1) states:

"An application to the court for an order shall be by motion which, unless made during a hearing or a trial, shall be made in writing. A motion, whether written or oral, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. ***."

Neither party made an application to the court for an order, pursuant to Civ. R. 7(B)(1), for summary judgment. The record does not indicate that a hearing or a trial was held in which a dispositive oral motion was made. Further, the record does not indicate that plaintiff was ever afforded an opportunity to present evidence on its equitable estoppel claim. Yet, the trial court in its entry finds the doctrine of equitable estoppel applicable but grants judgment against plaintiff because it failed to submit evidence in support of its claim. The trial court, in the absence of a written application, or a request during a hearing or trial, was without authority to *sua sponte* treat a trial brief as a motion for summary judgment.

Plaintiff's first, second and fourth assignments of error are well taken. The trial court erred in granting summary judgment on the equitable estoppel claim and the adverse posses-

sion claim without a proper motion before it, and without affording plaintiff an opportunity to present evidence to support its claims of equitable estoppel. The court's ruling on plaintiff's request for injunctive relief is reversed as is its ruling that plaintiff's claim for reimbursement of real estate taxes paid was mooted. The court's dismissal of plaintiff's trespass count and request for injunctive relief is also reversed.

Although the disposition of plaintiff's first, second and fourth assignments of error are determinative, we will pursuant to our obligation under App. R. 12(A) address plaintiff's remaining assignment of error.

APPELLANT'S ASSIGNMENT
OF ERROR III:
THE TRIAL COURT ERRED IN RULING THAT THE DOCTRINE OF ADVERSE POSSESSION CANNOT RUN AGAINST THE COUNTY OF CUYAHOGA WHERE THE REAL PROPERTY TO WHICH PLAINTIFF-APPELLANT SOUGHT TO OBTAIN TITLE WAS NOT WITHIN A LEGAL HIGHWAY AND THE COUNTY OF CUYAHOGA HAD NO PUBLIC PURPOSE FOR RETAINING OWNERSHIP OF SUCH LAND.

The trial court held that the doctrine of adverse possession cannot be applied against Cuyahoga County to divest it of title to its real property.

Generally, it has been held that adverse possession can not be applied against the State and its political subdivisions. In *Haynes v. Jones* (1915), 91 Ohio State 197 the court held, "No adverse occupation and user of land belonging to the State of Ohio, however long continued, can divest the title of the State in and to such lands." In *Haynes* the plaintiff sought to divest the State of Ohio of certain lands. The land in question was the land occupied by an embankment and borrow-pits adjacent to the Licking-Summit Reservoir, which reservoir was at the time the embankment was constructed a part of the canal system of the State. The Supreme Court stated that the title to this property was vested in the State of Ohio, "and having so vested that title could not be divested by any adverse user by an adjoining proprietor."

In *Heddleston v. Hendricks* (1895), 52 Ohio St. 460, the plaintiff brought suit against a county supervisor to restrain him from removing hedges and destroying a stone wall of the plaintiff, along a highway in the district of the supervisor. The *Heddleston* court held, "The right of an adjacent landowner to inclose by a fence, however constructed, a portion of a public highway, cannot be acquired by adverse possession, however long continued." The court in support of its holding cited *Little Miami Railroad Co. v. The Commissioners of Greene Co.* (1877), which stated, "In all cases where an effort has been made to acquire title to a portion of a public highway by adverse possession and enjoyment outside of a municipal corporation, such effort has failed."

In *Little Miami*, a railroad company had constructed a road across a public county road. The company, in its construction of the road, laid heavy sills from one abutment to the other and carried its road across on them. The court found in favor of the county holding that it was well established that the railroad company's claim of adverse possession could not defeat the county's title in the public highway. The court in support of its holding cited *Lane v. Kennedy* (1861), 13 Ohio St. 42 and *McClelland v. Miller* (1876), 28 Ohio St. 488. In *Lane* a landowner extended his fences so as to include a portion of the highways, not then used or needed for public travel, and continued the same for twenty-one years without any objection. It was held that such partial encroachment was not necessarily adverse to the public, nor inconsistent with its easement. Therefore, there existed no bar to its reclamation by the supervisor when the public required its use for travel. Again, in *McClelland* the court held, that an encroachment on a highway, regularly laid out and established, by putting up a fence or planting a hedge within the established limits, does not constitute adverse possession as will confer title.

In the cases of *The City of Cincinnati v. The First Presbyterian Church,* (1838), 8 Ohio 298, and of *The City of Cincinnati v. Evans* (1855), 5 Ohio St. 594 a different rule was applied. In the first case the right of the municipality to a portion of its public square occupied by a church was barred by an adverse possession of twenty-one years. In the second case the municipality's right to a portion of one of its streets encroached upon by a building of defendant's was barred by an adverse possession of twenty-one years. These cases have been regarded in the past as exceptional and also confined to *municipal corporations* where the possession of the municipality has been disturbed by the erection of large and valuable structures under circumstances which preclude the idea that encroachment was permissible on the part of the municipality.

Reviewing the above cases, we find that a common law rule has long existed which provides

that the state and its political subdivisions are not subject to loss of their streets and highways by adverse possession or prescription.[1]

In two fairly recent cases Ohio has recognized that a private litigant can divest a political subdivision of title to real property. In *Brown v. Bd. of Education* (1969), 20 Ohio St. 2d 68 the court held:

"A private litigant, in an action against a board of education of a local school district, can rely upon adverse possession to obtain title to land held in trust by that board for school purposes."

In *LTV Steel Co. Inc. v. City of Cleveland* (October 15, 1987), Cuyahoga App. No. 53827 this court recognized that R.C. 2305.05 carves out an exception to the general principle that municipal corporations are not subject to property loss by adverse possession or prescription. R.C. 2305.05 provides that where a *municipal street* has not been open for public use, an adjoining property owner who fences it in and remains in open and uninterrupted possession for the statutory time of twenty-one years thereby gains title to the property. In *LTV,* plaintiff LTV Steel Company averred that it had acquired title by adverse possession to a portion of Houston Avenue, located in the City of Cleveland, which it had fenced and paved, and from which it had excluded the public for more than the statutorily designated twenty-one years. This court found that the occupied portion of Houston had not been open to the public since 1956 and that the city had never objected pursuant to R.C. 5589.01 to LTV'S presence. Further, this court found that LTV had erected and maintained a fence and employed a security guard to enforce the exclusion. For more than the statutory period of time the public was denied access to that portion of Houston and the city failed toe object to LTV's presence. This court held that LTV had gained title to the street by adverse possession pursuant to R.C. 2305.05.

In the instant case plaintiff-appellant argues that since *Brown* recognizes that a private litigant can divest a political subdivision of title to real property, the trial court was incorrect in concluding that "the doctrine of adverse possession is not applicable against political subdivisions such as the county." Plaintiff further argues that the preclusion against 'the use of the doctrine of adverse possession to divest a political subdivision of title to real property applies only to those situations where the property in issue is used for street or highway purposes and that the

real property presently at issue has never been used as a street or highway.

It is true that *Brown, supra,* allows a private litigant to divest a political subdivision of title to real property. However, *Brown* is limited on its facts to property held by the Board of Education, the property of which is not a legal highway or street. *Brown* does not disturb the general rule that political subdivisions of the state are not subject to loss of their streets and highways. Further, *LTV, supra,* allows a plaintiff to gain title by adverse possession to *municipal* streets or alleys in limited circumstances i.e., 1) when the street has not been open to the public use and occupancy and 2) when the street has been enclosed with a fence by the owner(s) of the adjacent lots. LTV does not stand for the proposition that a private litigant can deprive the State and its political subdivisions, i.e., the county, of its streets and highways.

In the present record, it is undisputed that the property at issue is land supporting a public bridge and further that county engineers have traversed the property in making repairs to the bridge structure. We see no valid rationale for distinguishing land supporting public highways and streets from land supporting a county bridge. Given the undisputed fact that the land at issue is titled to the county and support's the county's bridge we find that this case would fall squarely into the enunciated general rule that where an effort has been made to acquire title to a portion of a public highway by adverse possession and enjoyment such effort must fail.

Assuming arguendo, that the doctrine of adverse possession was applicable in this instance, the undisputed facts indicate that plaintiff would still fail as it could not demonstrate compliance with the elements of adverse possession. In order for a litigant to acquire adverse possession of another's real property the possession arid use of the land must be open, notorious, adverse, continuous, hostile and exclusive for more than twenty-one years.

Plaintiff's claim to ownership of the property is that it used a small commercial building on the land for storage purposes which adjoins a structure on plaintiff's land. Plaintiff does not claim any permanent improvements were made to the land at issue by itself or its predecessors. Plaintiff's minimal interference with the county's property cannot be defined as open, notorious or hostile. This is particularly so since access to the storage building is thru plaintiff's building. Improvements, enclosures, cultivation

and pasturage are examples of the kinds of activity that may support a claim for adverse possession. See, generally, Section 15, 16 Ohio Jurisprudence 3d, *Adverse Possession.* Using a building for storage is of a different nature and character than improving, residing, enclosing or cultivating. Further, plaintiff's actions in entering the county's unoccupied structure were not hostile or adverse to the county's use. The land was being mainly used to support a bridge and plaintiff's possession could not be deemed adverse or hostile to this purpose. Further, plaintiff's presence was interrupted for bridge inspection, maintenance and repair. Defendant never stopped using its property for the public 's purpose which was to support the highway bridge. Plaintiff's possession was not exclusive, continuous or uninterrupted, and its claim of adverse possession therefore fails.

Based on the record before us, we would affirm plaintiff's assignment of error.

It is, therefore, considered that each party split the costs herein.

It is ordered that a special mandate be sent to said Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appelate Procedure.

*Judgment affirmed.*

KRUPANSKY, P.J., concurs.
PRYATEL, J., concurs in judgment only.

Sitting By Assignment, Judge Robert B. Ford, Retired, of the Geauga County Common Pleas Court and Judge August Pryatel, Retired, of the Eighth District Court of Appeals.

---

[1] "Carved out as an exception to the general principle that municipal corporations are not subject to property loss by adverse possession or prescription, R.C. 2305.05 provides that where a municipal street has not been open for public use, an adjoining property owner who fences it in and remains in open and uninterrupted possession for the statutory period of twenty-one years thereby gains title to the property." *LTV,* citing *Fondriest v. Dennison* (C.P. Tuscarawas, 1966), 8 Ohio Misc. 75, 80.